UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMBERLY HOWARD, et al., | CASE NO. C20-5593 BHS |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT |
| ETHICON, INC., et al., | |
| Defendants. | |

This matter comes before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's supplemental motion for summary judgment. Dkt. 82. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I.  PROCEDURAL HISTORY

This case originated in the MDL *In re Ethicon, Inc. Products Liability Litigation*, MDL No. 2327, located in the Southern District of West Virginia. Dkt. 1. Plaintiffs Kimberly and Bradley Howard bring claims against Defendants arising out of Mrs. Howard's surgical implantation of TVT, a polypropylene mesh implant created and designed by Defendants. *Id.*

ORDER - 1

1    Prior to the case's transfer to this Court, Defendants moved for partial summary
2    judgment. Dkts. 35, 36, 42. In June 2020, the case was transferred to this Court from the
3    Southern District of West Virginia. Dkt. 61. The parties then stipulated to dismiss with
4    prejudice seven of Plaintiffs' claims and agreed Defendants' motion for partial summary
5    judgment was moot. Dkt. 76. Plaintiffs' unconceded claims are: Negligence, Strict
6    Liability – Failure to Warn, Strict Liability – Design Defect, Fraudulent Concealment,
7    Negligent Misrepresentation, Negligent Infliction of Emotional Distress, Violation of
8    Consumer Protection Laws, Gross Negligence, Loss of Consortium, Punitive Damages,
9    and Discovery Rules and Tolling. *Id.* Defendants move for summary judgment on these
10   remaining claims. Dkt. 82.

## II.  FACTUAL BACKGROUND

In December 2002, Mrs. Howard was implanted with TVT to treat her stress urinary incontinence ("SUI") in Clackamas, Oregon. Dkt. 1, ¶¶ 8–12; Dkt. 83-2. Dr. Richard Wong performed Mrs. Howard's surgery to implant the device. Dkt. 83-1 at 6.

Prior to his retirement in 2007, Dr. Wong was based in and around Portland, Oregon. *See* Dkt. 83-3. Mrs. Howard first saw Dr. Wong in January 2000 at Kaiser Permanente's Mount Talbert Medical Office ("MTT") in Clackamas, Oregon after being referred by Dr. David Parsons. *See* Dkt. 83-4. From 2000 to 2002, Dr. Parsons treated Mrs. Howard regularly at MTT. *See, e.g.*, Dkt. 83-5. Following her TVT implantation surgery, Mrs. Howard saw Dr. Wong post-operatively in January 2003, Dkt. 83-9, and continued to receive follow-up care from Dr. Parsons and Dr. Wong for the remainder of 2003, *see, e.g.*, Dkt. 83-10.

Dr. Wong became board certified in obstetrics and gynecology in 1981 and was a member of the American College of Obstetrics and Gynecology and the American Urogynecology Society. Dkt. 85-2, Deposition of Dr. Richard Wong ("Wong Depo."), at 17:23–18:1, 19:10–20:5. During his career, Dr. Wong implanted approximately 500 TVT devices and testified in his deposition that he had very few complications. *Id.* at 15:4–11. Dr. Wong also surgically removed mesh products during his practice. *Id.* at 70:3–4. He further agreed that TVT was a safe and effective device for the treatment of SUI and stated that he never believed that TVT was a defective device. *Id.* at 15:4–19.

Dr. Wong testified that, prior to 2002, he was generally aware of the potential risks and complications associated with TVT implants, including vaginal bleeding, urethral erosion, mesh protrusion, infection of the mesh, and TVT device failure, among others. *See id.* at 33:19–35:10, 43:13–44:15. Dr. Wong learned of these risks through his personal experience and from case reports. *Id.* at 44:17–20. But despite these risks, Dr. Wong continued to perform the procedure because he did not see many complications post-operatively. *See id.* at 40:17–41:11. Dr. Wong additionally testified that he assumed that Ethicon would contact him and alert him of any potential issues that it became aware of. *Id.* at 66:10–19.

The TVT product itself was accompanied by a package insert commonly referred to as "Instructions for Use" ("IFU"). Dkt. 84 at 3. Plaintiffs assert that the TVT IFU did not include all known risks and significantly downplayed the frequency or severity of the risks and/or adverse reactions. *Id.* at 3–4 (citing, *inter alia*, Dkt. 85-6 at 67, 72–76).

1       TVT products are made with polypropylene mesh (also referred to as prolene

2 mesh), which Plaintiffs argue is unsuitable for permanent implantation. Howard's case-

3 specific expert, Dr. Bruce Rosenzweig, opines that the characteristics of polypropylene

4 mesh make it unsuitable for permanent implantation, including: "(1) excessive rigidity of

5 laser-cut mesh; (2) degradation of the mesh; (3) chronic foreign body reaction; (4)

6 infections and bio-films; (5) fibrotic bridging leading to scar plate formation and mesh

7 encapsulation; and (6) shrinkage/contraction of the encapsulated mesh." Dkt. 84 at 6

8 (citing Dkt. 85-6 at 13). Plaintiffs further assert that prolene mesh is not suitable for

9 permanent human implantation because the polypropylene resin used to manufacture the

10 mesh products is incompatible with strong oxizers and/or strong oxidizing agents.[1] *Id.* at

11 5–6 (citing Dkt. 85-7 at 4, Dkt. 85-8 at 3). Rosenzweig opines that it is well known to

12 physicians with expertise in the pelvic floor that "vaginal and perivaginal tissues are

13 ready sources for peroxide," which is a strong oxidizing agent. Dkt. 85-6 at 16, 61–62.

14       Plaintiffs additionally represent that alternative, safer designs existed. Dkt. 84 at

15 7–8. Their general expert, Scott Guelcher, opines that dermal allografts (medical products

16 that have been prepared from human cadaveric fascia and human dermis) and

17 polyvinylidene fluoride ("PVDF") do not present the same chronic complications

---

[1] Howard relies upon two Material Safety Data Sheets ("MSDS") released by Defendants' polypropylene resin manufacturer to support this assertion. Defendants object, arguing that the MSDSs were issued by non-party material suppliers pursuant to Occupational Safety and Health Administration regulations pertaining to the handling of raw materials. Dkt. 88 at 2–3 & n.3; *see also* 29 C.F.R. § 1910.1200(b)(1). Defendants thus argue the MSDSs are inadmissible because they have no relationship to or bearing upon their finished medical devices.

associated with TVT mesh and were available when the TVT device was first commercialized. Dkt. 85-11 at 22–24.

Mrs. Howard alleges that she suffered injuries because of her TVT implant, and her and her husband thus bring claims under the Washington Products Liability Act ("WPLA"), RCW Ch. 7.72, among others.

### III. DISCUSSION

Defendants move for summary judgment arguing that Oregon's statute of repose should apply to Plaintiffs' claims and that, under Oregon law, their claims are untimely. Dkt. 82 at 8–14. Defendants alternatively argue, if Washington law applies, that Plaintiffs have failed to establish proximate cause and that their non-products liability claims are preempted. *Id.* at 14–24.

**A.** **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.   Choice of Law**

Defendants argue that all of Plaintiffs' claims are time barred because Oregon's ten-year statute of repose applies. A federal court, sitting in diversity, must apply "the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Washington rules, when parties dispute choice of law, there must be an actual conflict between the laws or interests of

Washington and the laws or interests of another state before the court will engage in a conflict of laws analysis. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100–01 (1994).

There is a well-settled conflict between Washington's statue of repose and Oregon's statute of repose. *See Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 212 (1994); *Caswell v. Olympic Pipeline Co.*, No. C10-5232BHS, 2010 WL 2871122, at *2 (W.D. Wash. July 22, 2010). Oregon's statute, Or. Rev. Stat. § 30.905, extinguishes the right to bring claims for civil products liability after ten years. In contrast, Washington's statute, RCW 7.72.060, provides repose after the product's safe useful life has expired, and a rebuttable presumption of twelve years is applicable. There is an actual conflict between the two laws, and the Court will apply Washington's choice of law analysis to determine which of the two statutes of repose applies.

In determining which state's law applies in a diversity action, federal courts must apply the forum state's choice-of-law rules. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)). "In resolving conflict of law tort questions, Washington has abandoned the *lex loci delicti* rule and follows the *Restatement (Second) of Conflict of Laws'* most significant relationship test." *Singh v. Edwards Lifesciences Corp.*, 151 Wn. App. 137, 143 (2009) (citing *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580 (1976)).

In determining which jurisdiction has the most significant relationship to a particular issue, which in this case is the applicability of Oregon's statute of repose, the Court first weighs "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of

1  incorporation and place of business of the parties, and (d) the place where the

2  relationship, if any, between the parties is centered." *Id.* at 143 (citing *Johnson*, 87 Wn.2d

3  at 581). If these contacts are balanced, the second step is to consider "the interests and

4  public policies" of the concerned states. *Johnson*, 87 Wn.2d at 582.

5  The contacts here are divided between Washington, Oregon, and New Jersey.[2]

6  Mrs. Howard resides in Washington, but her TVT device was surgically implanted in

7  Oregon. Defendants argue that the injury occurred in Oregon, while Plaintiffs assert that

8  the overwhelming majority of her injuries occurred in Washington. Defendants Johnson

9  & Johnson and Ethicon are both headquartered in New Jersey. "In a products liability

10 action, the place where the conduct causing the injury occurred is the place where the

11 defendant designed, manufactured, or was otherwise involved with the product in

12 question." *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1179 (W.D. Wash. 2006)

13 (internal quotations omitted). Plaintiffs argue that Ethicon made business decisions

14 regarding the TVT's product development and product warnings in New Jersey.

15 Defendants assert that the TVT device was manufactured in Europe. Finally, Defendants

16 had no direct contact or relationship with Mrs. Howard. But to the extent there is a

---

[2] Notably, no party advocates for the application of New Jersey law, though the state also has some contacts. New Jersey has a two-year statute of limitations for products liability claims, N.J.S.A. 2A:14-2, and it does not appear that the state has a statute of repose. *See Gantes v. Kason Corp.*, 145 N.J. 478, 484, 679 A.2d 106 (1996), *abrogated by McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 153 A.3d 207 (2017) (engaging in a choice of law analysis between Georgia's ten-year statute of repose for products liability cases and New Jersey's two-year statute of limitations); *State v. Perini Corp.*, 425 N.J. Super. 62, 80, 39 A.3d 918 (2012) (concluding that claims brought under New Jersey's Product Liability Act are not subject to the state's statute of repose for claims arising out improvements to real property).

1  relationship between the parties, it is centered in New Jersey.[3] *See Zenaida-Garcia v.*
2  *Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 263 (2005) (concluding that the place
3  where the relationship was centered was where the unsafe design occurred).

4      The only significant contact with Washington is Plaintiffs' residency in the state.
5  The significant contact with Oregon is that it is the place where Defendants shipped the
6  products and where the implantation causing the ultimate injuries occurred. This is like
7  *Rice v. Dow Chemical Co.*, where the plaintiff developed leukemia after exposure to
8  herbicides manufactured by Dow. 124 Wn.2d 205, 207 (1994). His exposure occurred
9  almost entirely in Oregon, and the only significant Washington contact was that the
10 plaintiff resided in Washington when he became ill. *Id.* at 207, 215–16. Engaging in a
11 choice of law analysis, the Washington Supreme Court concluded that Oregon had the
12 most significant relationship because the relationship between the parties occurred there,
13 the damaging product was placed in the stream of commerce and sent there, the injury
14 occurred there, and, at the time of exposure, the plaintiff lived there. *Id.* at 216–17.

15     The *Rice* court further discussed the interests and public policies in applying
16 Oregon's statute of repose. *See id.* The Washington Supreme Court held that "Oregon's
17 interest is in providing repose for manufacturers doing business in Oregon and whose
18 products are used in Oregon state" and that "[a]pplying Oregon law achieves a uniform

---

[3] Defendants argue that the relationship between the parties is centered in Oregon because that is where Mrs. Howard was "exposed" to the product. *See* Dkt. 82 at 10, Dkt. 88 at 4–5. This Court has held in products liability cases, the relationship between the parties under a choice of law analysis is centered where the unsafe designed occurred. *See White v. Ethicon, Inc.*, No. C20-952, 2022 WL 326787, at *2 (W.D. Wash. Feb. 3, 2022).

result for injuries caused by products used in the state of Oregon and predictability for manufacturers whose products are used or consumed in Oregon." *Id.* at 216.

When considering the contacts between Washington and Oregon, the Court concludes that the contacts are almost balanced, but slightly tip in favor of Oregon. Plaintiffs reside in Washington, and it is true that Mrs. Howard experienced the majority of her injuries in Washington. But like in *Rice*, the Defendants' action causing the resulting injuries occurred in Oregon. In *Rice*, Dow shipped the injury-causing chemicals to Oregon, where the plaintiff was exposed. Here, Defendants shipped the injury-causing TVT to Oregon, where Mrs. Howard was surgically implanted and received her initial follow-up care. Defendants also shipped mesh products, like the TVT, to Washington. But the fact that Defendants shipped the TVT product at issue to Oregon and not Washington is persuasive to the Court's determination that Oregon has the slightly more dominant connections to the case because the *Rice* court considered where the injury-causing product was shipped to as well.

Even assuming the contacts were equally balanced, the Court must then consider the interests and public policies of each state. Washington has made the WPLA the exclusive remedy for products liability cases in this state. *See Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853–54 (1989) (en banc). But that interest in exclusivity must be considered alongside Oregon's interest "in providing repose for manufacturers doing business in Oregon and whose products are used in Oregon state." *Rice*, 124 Wn.2d at 216. Plaintiffs provide policy reasons for why the Court should apply Washington law, *see* Dkt. 84 at 12–13, but their arguments do not sufficiently rebut the

interests of applying Oregon's statute of repose as detailed in *Rice*. "Applying Oregon law achieves a uniform result for injuries caused by products used in the state of Oregon and predictability for manufacturers whose products are used or consumed in Oregon." *Rice*, 124 Wn.2d at 216. Defendants' products were used in Oregon and caused the ultimate injuries, and this policy consideration is persuasive.

As such, the Court determines that Oregon law applies under Washington's choice of law analysis. Oregon's ten-year statute of repose, Or. Rev. Stat. § 30.905, applies, and has extinguished Plaintiffs' right to bring claims for civil products liability because they did not file suit until eleven years after Mrs. Howard's TVT implant surgery. Because applying the Oregon statute of repose is dispositive in that Plaintiffs' claims are not actionable, Defendants' motion for summary judgment is granted, and Plaintiffs' claims are dismissed with prejudice.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' supplemental motion for summary judgment, Dkt. 82, is **GRANTED**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 14th day of February, 2022.

BENJAMIN H. SETTLE
United States District Judge